# STATE OF MICHIGAN

# COURT OF APPEALS

In re EDWARDS/ANNEAR, Minors.

UNPUBLISHED
July 13, 2017

No. 336475
Dickinson Circuit Court
Family Division
LC No. 15-000504-NA

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Because the trial court did not clearly err by terminating respondent's parental rights, we affirm.[1]

In April of 2015, the Department of Health and Human Services (DHHS) filed a petition, seeking to remove respondent's children from her care. The petition alleged unsuitable housing, improper supervision of the children, a history of substance abuse, and an act of physical violence perpetrated by respondent against her aunt in the children's presence. At the adjudication, respondent admitted to the allegations in the petition relating to her failure to provide the children with suitable housing due to the unsanitary condition of her home. The trial court assumed jurisdiction over the children and, for approximately 18 months, respondent had the opportunity to participate in various services aimed at addressing her barriers to reunification. However, for much of the case, respondent's participation in services was sporadic; and, despite some more notable effort toward the conclusion of the case, she failed to demonstrate any lasting change. The trial court determined that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) and that termination was in the children's best interests. Respondent now appeals as of right.

Respondent argues that the trial court erred in finding that the statutory grounds for termination were established by clear and convincing evidence. According to respondent, the trial court focused on circumstances that existed during the early stages of the case and failed to recognize the significant progress respondent had made by the time of the termination hearing.

---

[1] The court also terminated the parental rights of the children's fathers, but they are not parties to this appeal.

-1-

In view of this progress, respondent contends that the trial court clearly erred by concluding that termination was justified under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We disagree.

Before a court can terminate a parent's rights to his or her child, the court must find by clear and convincing evidence that one or more of the statutory grounds for termination listed in MCL 712A.19b(3) exist. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A trial court's decision that a statutory ground for termination has been proven by clear and convincing evidence is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000). "When reviewing the trial court's findings of fact, this Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

The trial court found that grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which permit termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court's findings in support of §§ 19b(3)(c)(*i*) and (c)(*ii*) are not clearly erroneous. Under § 19b(3)(c)(*i*), when determining the conditions that led to adjudication, the trial court considers the "conditions that led to the filing of the initial petition" and the court "may apprise itself of all relevant considerations." *Matter of Jackson*, 199 Mich App 22, 26; 501 NW2d 182 (1993). In this case, the conditions leading to adjudication included unsuitable housing, a history of substance abuse, and an act of physical violence perpetrated by respondent in front of the children, which demonstrated anger management issues. Given the services offered to respondent and her failure to make meaningful progress toward resolving these conditions, the trial court did not err by finding grounds for termination existed under § 19b(3)(c)(*i*). See *In re Frey*, 297 Mich App 242, 246; 824 NW2d 569 (2012); *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). In particular, with respect to housing, the court's finding that respondent's housing situation remained "tenuous," despite some progress in this area, is supported by evidence that respondent had not remained current with her rent or utilities, and remained at risk of eviction. At the time of the termination hearing, respondent was unemployed and relying on unemployment benefits for income. In addition, respondent was not current with her rent even when she was employed. Therefore, the trial court's determination that housing continued to be an issue, and was not likely to be corrected within a reasonable time, is not clearly erroneous.[2]

With respect to respondent's anger management issues, while the children were still in her care, respondent physically assaulted her aunt in front of the children. At the termination hearing, respondent acknowledged that anger management remained her most significant issue. Although she testified that she had recently begun Dialectic Behavioral therapy, and that she was taking Neurontin as a mood stabilizer, she had not yet demonstrated that her anger management issues had been controlled. Rather, as discussed by the trial court, respondent's "volatility" continued to affect her relationships, including personal relationships as well as dealings with caseworkers and others. Respondent was asked to leave a group session at Caring House due to her inability to remedy her anger issues, she had "outbursts" at caseworkers, and she was fired from her job because of a disagreement that turned into a "huge blowout." The trial court's determination that respondent's anger issues remained a barrier to reunification is supported by the evidence. In addition, given the length of time respondent has been unable to resolve this issue despite being offered services, the trial court's finding that it would not be rectified within a reasonable time is not clearly erroneous. Cf. *In re Williams*, 286 Mich App at 272.

With regard to respondent's drug use, the testimony and statements by providers at earlier hearings indicate that, for most of the case, respondent continued to use marijuana, despite a substance abuse assessment which showed a diagnosis of "cannabis abuse" and a

---

[2] In addition, testimony was presented that respondent did not really reside in her apartment, but instead surreptitiously lived with her current boyfriend. The trial court did not use this information to directly support its finding that housing remained an issue. But considering that a filthy home was one of the reasons for the children's removal, the lack of information about respondent's actual living conditions does not support her position that she had secured and maintained appropriate housing for the children.

-3-

recommendation to seek treatment. The fact that respondent had remained clean between September of 2016 and the termination hearing in November of 2016 is commendable. But coupled with respondent's lack of honesty concerning her amphetamine use, the trial court did not clearly err in finding that this was an insufficient period of time to demonstrate that this condition had been rectified, or that it would likely be so within a reasonable time. Cf. *id.*

For purposes of § 19b(3)(c)(*ii*), the new issues identified by the trial court involved respondent's repeated decisions during the pendency of this case to pursue romantic relationships, sometimes with abusive partners, despite being ordered not to do so, as well as the fact that the children had complained of abuse at the hands of respondent's boyfriends during this proceeding. The trial court found that these continued relationships showed respondent's inability to place the children ahead of her own desires. This finding is supported by evidence that respondent returned to an earlier boyfriend in August 2015, after they were involved in a domestic violence incident. In addition, more recent court reports and letters to the court indicated that the children had stated that respondent's boyfriend was "scary" and "mean," and both children reported that the boyfriend had struck them. Respondent's failure to protect the children from such conduct would cause the children to come within the court's jurisdiction, and her continuing decisions to pursue harmful relationships makes plain that, despite receiving a reasonable opportunity to rectify these conditions, she has not done so and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the children's ages. Thus, the trial court's determination regarding these new grounds is not clearly erroneous.

The evidence also supports the trial court's reliance on § 19b(3)(g). A parent's failure to comply with a parent-agency agreement is evidence of the parent's failure to provide proper care and custody. *In re Trejo*, 462 Mich at 360-363; *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Respondent failed to comply with her treatment plan by continuing to pursue intimate relationships and then lying about the relationships. In addition, until the last 90-day period, respondent failed to participate in, or benefit from, services, in particular with respect to her anger management issues. Respondent also failed to deal with, or even acknowledge, her substance abuse problem until it was clear a petition to terminate her rights would be filed. We also agree with the trial court's description of respondent's tenuous housing situation. And, although respondent was employed for much of the proceedings, her unresolved anger management issues caused her to lose her employment. As the trial court aptly observed, respondent had shown a history of engaging in services, or partly engaging in services shortly before a court hearing, and then disengaging in them again. The trial court's reliance on this spotty record of compliance to support its finding that respondent was not reasonably likely to be able to provide proper care and custody within a reasonable time is not clearly erroneous. Although respondent maintained that she could obtain and continue employment, take care of her children, and continue to participate in services, her lack of progress throughout most of the proceedings demonstrates that it is not reasonable to expect her to successfully meet these objectives, especially considering that she was expecting another child and would have additional responsibilities taking care of an infant. Given these factors, the trial court did not clearly err in finding that § 19b(3)(g) was established by clear and convincing evidence.

Sufficient evidence also supports the trial court's reliance on § 19b(3)(j) as an additional ground for termination. The harm to a child contemplated under § 19b(3)(j) includes emotional harm as well as physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

And, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. With regard to this subsection, the trial court again relied on respondent's lack of progress with her anger management issues, including her dismissal from the Caring House program. The trial court found that respondent's "propensity for conflict with caseworkers, service providers, counselors, and those with whom she pursues intimate relationships" supported its belief that the children's mental health would be at serious risk of harm if they were returned to respondent. Although she testified that she had recently begun participating in a new program that would address her anger management skills, the evidence demonstrated that her anger management problems had not been resolved. Respondent has a long-standing history of confrontation, which was problematic enough to prevent her from benefiting from needed services. Respondent admitted at the termination hearing that anger management continued to be her "biggest issue." The evidence supports the trial court's finding of a reasonable likelihood of mental harm to the children if they were returned to respondent's home.

Respondent also argues that the trial court erred in finding that termination of her parental rights was in the children's best interests. Specifically, respondent contends that the trial court essentially terminated her rights based on its findings regarding the statutory grounds for termination and failed to consider the wide variety of factors relevant to a best interests determination. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). A trial court's decision regarding a child's best interests is reviewed for clear error. *In re Trejo*, 462 Mich at 356-357. Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re White,* 303 Mich App at 713. Factors to be considered include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (internal citations omitted). Further, courts may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 248-249.

Contrary to respondent's arguments, the trial court conducted an appropriate best interests analysis, weighing a variety of relevant factors. As noted by the trial court, the evidence indicated that respondent had a strong bond with her children and that she was capable of providing nurturance and guidance in a supervised visitation setting. However, based on the evidence presented, the trial court found that, when "facing everyday issues," respondent would not be able to "consistently provide for the children especially with the addition of a third child." In terms of basic material needs, the trial court aptly noted that respondent had scarcely been able to provide for her owns needs, let alone those of her children. In addition, in terms of emotional needs, the trial court highlighted respondent's inability to resolve everyday conflict "without resorting to aggressive behavior and vulgarities" that would be detrimental to the children. Further, the trial court also emphasized that the children—aged 5 and 8—were in need of permanency to ensure their emotional and developmental growth. For the 20 months that the case had been ongoing, respondent had proved unable to provide this needed permanency; and,

the court reasoned that further delay posed a risk to the children's mental well-being and would cause the children to "become legal orphans and experience a delay in achieving a permanent placement." The court also noted that, when the children reported in counseling in August 2016 that they had been abused by respondent's boyfriend, respondent's response was to advocate for a different counselor. Respondent's decisions to continue to pursue domestic relationships, even when it was revealed that her boyfriends were harming the children, further demonstrated her inability to place her children's emotional and other needs ahead of her own. Overall, the trial court did not clearly err in finding that a preponderance of the evidence demonstrated that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering